

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

January 17, 1974

The Honorable Bill Meier, Chairman          Opinion No. H- 217
Convention Organization Committee
Texas State Senate                          Re: May Constitutional
Austin, Texas                                   Convention propose
                                                additions to Texas
Dear Delegate Meier:                            Bill of Rights?

Your letter requesting our opinion, after quoting subsection (g) of Sec. 2 of Article 17 of the Texas Constitution, continues:

"Some interest has been exhibited in the Constitutional Revision Commission hearings and in correspondence to convention delegates in expanding the Texas Bill of Rights to include such items as a right to work, a right to live, and a right to a clean environment, among others. So that we may proceed to plan for an orderly convention, at the request of the Convention Organization Committee members, it is desirable that we establish at this time whether or not items may be added to the Texas Bill of Rights.

"The specific question I propose is:

"In light of your earlier opinion (H-121) which stated . . .

'Therefore, it is our opinion that the Constitutional Convention has only those powers which are expressly granted to it by Article 17, § 2, and must operate in the framework which that provision prescribes.'

"and in view of the limiting language of subsection (g) which states , . .

'(g)  The Bill of Rights of the present
Texas Constitution shall be retained
in full.'

"may the Constitutional Convention, convening in January, 1974,
propose additions to the Bill of Rights, which is Article I of
the present Texas Constitution? "

Your question and our answer to it obviously are limited to the powers
of the Constitutional Convention functioning pursuant to Sec. 2 of Article 17
of the Constitution, adopted in November, 1972.

Rights guaranteed by the Bill of Rights have the same constitutional
dignity as rights guaranteed elsewhere in the Constitution.  The lang-
uage of subsection (g) clearly indicates that, at a minimum, the present
Bill of Rights must be carried forward in full into any new Constitution.
Nothing in that subsection would prevent addition of other rights, else-
where in the Constitution, so long as those newly added rights do not alter
or modify rights guaranteed by the Bill of Rights.  Otherwise such alter-
ation or modification would result in not carrying the Bill of Rights
forward "in full", whether such modification occurred directly or indirectly

This much is clear.  What is not totally clear from the language
of subsection (g) is whether such new rights as you have mentioned may be
included in the new Constitution only as a part of the general provisions,
or whether they might be added as additions to Article I, the Bill of Rights.

We have found no case directly in point on this question, and must therefore
utilize general rules of statutory construction including determination of legis-
lative intent, to arrive at an answer.

Our attempt to determine the intent of the Legislature  in proposing
subsection (g) of Article 17, Sec. 2, and of the people of the State in adopting
it, requires that we look to the background of the provision, to the words
used, and to subsequent interpretations given it.

In the course of our inquiries, Senator Nelson A. Wolff, one of the
sponsors of the resolution leading to the adoption of Sec. 2 of Article 17,
has advised us:

> "The intent of the subsection was to guarantee that the
> existing language of the Bill of Rights of the 1876
> Constitution would not be altered by deletion or revised
> language of existing provisions.
>
> "I do not believe that the intent of subsection (g) was
> to prohibit any additions but rather to insure retention
> of all existing rights and language.
>
> "While, . . . that provision was probably not
> specifically designed to prohibit any addition, but
> rather to preserve intact the language of the 1876
> Bill of Rights, I am firmly convinced that many of
> the legislators who voted for the resolution and the
> amendment which added this language intended that
> the Bill of Rights should not be altered in any way,
> either by addition or by deletion."

We are advised by Sam Coats, a sponsor of the subsection (g) language:

> "As a co-sponsor of HJR 61, I felt it essential to leave the
> present Bill of Rights in the Texas Constitution completely
> intact in order to assure passage of HJR 61. It was my
> intention in sponsoring the amendment to the resolution
> that the present Bill of Rights be left completely alone by
> the Constitutional Convention. Consequently, the amend-
> ment was designed to remove the present Bill of Rights
> from the purview of the Convention and prevent it from
> being changed in any way, either by addition or deletion."

Ben Bynum, a principal sponsor of H.J.R. 61 of the 62nd Legislature, calling for the submission of Article 17, Sec. 2, to the voters, has written us:

> "I feel compelled to make several observations relating to
> the adoption of this amendment since in retrospect, I
> realize that there could be some confusion as to the precise
> meaning of the provision. At the time of adoption and indeed;
> subsequent to that adoption, the intent of the House of Rep-
> resentatives, which added the language was clear. In
> supporting the amendment by Mr. Coates, with whom I worked
> closely on the resolution, I intended to prohibit the changing

> in any manner, either by addition or deletion, of any portion
> of the Bill of Rights.  It was my feeling then, as it is now,
> that the fundamental guarantees afforded to all the citizens
> of Texas by the Bill of Rights contained in the 1876 Consti-
> tution have not changed and should not be altered in any
> fashion.  What the Legislature proposed in H. J. R. 61 was
> a Convention which would re-evaluate our framework of
> State and local government in Texas and the divisions of
> responsibilities among the branches of government; it was
> not, in my opinion, the intent of the Legislature to alter
> in any way fundamental principles of human rights." (Em-
> phasis added)

The public's understanding of the meaning of Article 17, Sec. 2, was doubt-less shaped in significant part by media statements preceding the election. We have looked to newspaper articles advising the public on the proposed amendment prior to its adoption in November, 1972, and find statements such as: "Only the Bill of Rights is exempted from consideration," (Mike Kingston, Dallas Morning News, October 17, 1972); " . . . any new docu-ment produced by the legislature in 1974 must contain the current constitution's bill of rights . . . ", (Sam Kinch, Jr. , Dallas Morning News, August 12, 1972); "The existing Bill of Rights, for example, would be preserved untouched by the draftsman" (Stewart Davis, Dallas Morning News, September 2, 1972); " . . . requires that the constitutional convention not disturb the bill of rights, which must be retained," (Clay Robinson, San Antonio Light, September 24, 1972); "One thing would be held out of reach to the convention - the 29 -section bill of rights . . . ." (Robert Heard, Corpus Christi Caller, October 24, 1972); "The bill of rights now in the constitution would not be altered or revised, but fully retained in any new document" (Bill Coulter, Houston Post, October 27, 1972).  Others might be cited.

Various interested groups have suggested varied interpretations.

The Constitutional Revision Commission, created by authority of Sec. 2 of Article 17, did not itself determine the precise meaning of subsection (g). It did not add to or delete from the Bill of Rights in its proposed revision. Its published commentary states:

"The Commission did not undertake any changes in the Bill of Rights (Article I of the Constitution of 1876) since the constitutional amendment which initiated the revision procedure requires that the Bill of Rights be retained in full. Therefore, no commentary for the Bill of Rights is provided in this report."

When we consider all of the evidence which has been made available to us we are compelled to conclude that it was the general intent of the Legislature and of the people of Texas in submitting and adopting, respectively, subsection (g) that the provision would prohibit any change in the Bill of Rights either by deleting or altering the existing sections or by adding new ones as a part of the new Constitution's Bill of Rights.

We do not interpret the language as prohibiting the insertion of "rights" provisions in other Articles of the Constitution. We must add, however, that the admonition of subsection (g) that the Bill of Rights "shall be retained in full" is a substantial one and, no matter where a provision may be inserted or what right it may protect, no provision appearing in the proposed Constitution may either directly or indirectly alter or modify the effect of any existing provision of the Bill of Rights.

## SUMMARY

Article 17, Sec. 2, subsection (g) of the Constitution of 1876 requires that any new Constitution proposed by the Constitutional Convention retain the present Bill of Rights exactly as it is, without addition or deletion, and that no other provision elsewhere in the Constitution may in any way alter the effect of any provision of the Bill of Rights. "Rights" provisions which do not alter or modify the Bill of Rights, may be placed in other appropriate articles of a proposed Constitution.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

p. 1014

APPROVED:


LARRY F. YORK, First Assistant


DAVID M. KENDALL, Chairman
Opinion Committee